| | | |
|---|---|---|
| In re | ) | Case No. 04-00034 |
| | ) | Chapter 7 |
| TRACY JEAN HAUGEN, | ) | |
| | ) | |
|     Debtor. | ) | Re: Docket Nos. 68, 108, 109, |
| _____ | ) | 113 & 117 |

## MEMORANDUM OF DECISION ON
## DEBTOR'S MOTION FOR ORDER TO SHOW CAUSE
## AND TRUSTEE'S FINAL REPORT
## AND FINAL APPLICATION FOR COMPENSATION

**I.    INTRODUCTION**

    This is an uncomplicated chapter 7 case. It should have been closed within twelve to eighteen months after filing. Instead, it has dragged on for over four years. This delay occurred because the debtor's former counsel failed to inform the debtor of her rights and duties, the trustee failed to fulfill his fundamental duty to close the case expeditiously and to handle the estate's money with due care, and the trustee and the debtor's former counsel allowed a personal feud (see docket no. 81) to interfere with their work.

    At long last, the trustee has filed his final report and compensation application (docket nos. 108 and 109). The debtor and the United States Trustee have filed objections (docket nos. 113 and 117). The debtor also filed a Motion for Order to Show Cause (docket no. 68), which seeks sanctions against the trustee and

other relief.

I will reduce the trustee's compensation to an amount which I find reasonable in light of the trustee's unexcused delays and other failures in this case. I will deny the debtor's request for affirmative relief against the trustee for procedural reasons, without prejudice to her right to assert such claims against the trustee in an appropriate manner.

**II. FACTS**

The debtor filed her chapter 7 petition on January 7, 2004. Dawn Smith was the debtor's attorney. The debtor's schedules showed assets of $108,549. The largest asset was the debtor's residence, which she valued in her schedules at $106,000, based on the most recent tax assessment. The debtor claimed that all of the equity in her home and all of her other property was exempt. The debtor scheduled liabilities of $98,839, including claims of $83,951 secured by her residence and general unsecured claims of $14,888.

The Office of the U.S. Trustee appointed Ronald K. Kotoshirodo as trustee. After the meeting of creditors on February 6, 2004, the trustee reported that he was investigating the existence of property of the estate not subject to exemptions or security interests. According to the trustee's timesheets, however, he did no work on the case for more than six months after the meeting of creditors.

U.S. Bankruptcy Court - Hawaii    #04-00034    Dkt # 134    Filed  05/06/08    Page 2 of 20

The debtor received her discharge on April 8, 2004. In July 2004, debtor entered into a contract to sell the residence for $158,500. The debtor did not notify the trustee or seek court approval of the sale. She later explained that she believed that her discharge meant that her case was closed. To a layperson, selling the residence may have also seemed reasonable because the trustee had not tried to market the house during the preceding six months. The debtor's lay impression was wrong, however, and her attorney, Ms. Smith, apparently failed to tell her otherwise; the residence remained property of the estate and only the trustee had the power to sell it.

The trustee learned from a real estate agent in late August 2004 that the debtor was selling the residence. He reminded Ms. Smith that the residence was still property of the bankruptcy estate, and he asked for information about the sale efforts. In September 2004, he conducted a Fed. R. Bankr. P. 2004 examination of the debtor.

On August 27, 2004, the trustee filed a motion to authorize him to hire a real estate agent and offer the residence for sale. The debtor filed an opposition to the trustee's motion and a motion to dismiss her bankruptcy case, but she withdrew both documents. The court granted the trustee's motion on September 27, 2004.

The trustee promptly found a buyer for the residence. On November 9,

3

U.S. Bankruptcy Court - Hawaii   #04-00034   Dkt # 134   Filed  05/06/08   Page 3 of 20

2004, he filed a motion to sell the property for $165,000. On December 16, 2004, the court approved the trustee's sale of the residence and authorized the trustee to pay the costs of sale, the secured claims, and the debtor's homestead exemption at closing. The sale produced enough money to pay all unsecured claims in full and leave a significant surplus for the debtor.

      The sale closed on January 7, 2005. The escrow company that closed the sale promptly delivered the net proceeds to the trustee in the amount of $42,706.10. The trustee misplaced the check and allowed the case to languish. According to his timesheets, he did no work whatsoever on the case between January 5, 2005 and April 19, 2006, a period of over fifteen months. His assistant's timesheets show that she prepared and filed interim reports in June 2005, for the period ending in March 2005, and in February 2006, for the period ending in September 2005. These reports falsely stated that the trustee had not received the proceeds of the residence. Preparing these reports should have reminded the trustee about the sale and should have prompted him to look for the net proceeds. But he did nothing.

      By spring 2006, the debtor had spent the exempt proceeds of the house to sustain herself and desperately needed the surplus to pay her living expenses. In April 2006, after Ms. Smith was unable to obtain information from the trustee, the debtor contacted the Office of the U.S. Trustee. The Assistant U.S. Trustee then

4

contacted the trustee. The trustee initially said that he had not received the net proceeds from escrow. The Assistant U.S. Trustee then contacted the escrow company that had closed the sale and learned that the escrow company had delivered the proceeds to the trustee promptly after closing. The Assistant U.S. Trustee checked the trustee's bank account records and found that the trustee had never deposited the check. When, the Assistant U.S. Trustee pointed all of this out to the trustee, the trustee looked in his files and found the uncashed check. By then, the check had become stale.

Faced with such an embarrassing situation, one would expect the trustee immediately to seek a replacement check from the escrow company. But he did nothing. Instead, the Assistant U.S. Trustee took the initiative and obtained a replacement check for the trustee.

The trustee and the debtor then stipulated that the trustee would immediately release $5,000 to the debtor. The court approved the stipulation on April 21, 2006.

Because the trustee had sold property of the estate, the trustee was obligated to file tax returns. The trustee did not take any steps, however, to have the returns prepared for fifteen months after the sale closed. On April 24, 2006, the court granted the trustee's motion for authority to hire an accountant to prepare the returns. The tax forms were completed in October 2006. The trustee does not

U.S. Bankruptcy Court - Hawaii   #04-00034   Dkt # 134   Filed  05/06/08   Page 5 of 20

explain why he took fifteen months to hire an accountant and gave the accountant six months to prepare a very simple set of returns.

Once the tax returns were completed, the trustee made some progress toward closing the case by filing the accountant's application for compensation. Ms. Smith, the debtor's attorney, impeded the progress of the case somewhat by filing an objection to an allegedly duplicative and tardy claim. In response, the trustee pointed out that he had convinced the creditor to reduce its claim and file an amended proof of claim. The claim to which the debtor objected was therefore neither duplicative nor tardy. At the hearing on the objection, Ms. Smith stated that she had pursued the objection because she wanted to bring the case to the court's attention. I overruled the claim objection on January 24, 2007.

On January 28, 2007, the debtor filed the motion to show cause, seeking an order compelling the trustee to account for and disburse the estate's funds, file accurate interim reports, pay sanctions to the debtor, and pay attorneys' fees. The motion also suggested that the trustee should be suspended or removed from the case.[1] Ms. Smith filed motions seeking similar relief in sixteen other cases in which she represented the debtor and Mr. Kotoshirodo was the trustee. The

---

[1] The motion originally sought relief against the Office of the U.S. Trustee as well, but the debtor withdrew those requests (docket no. 92).

6

U.S. Bankruptcy Court - Hawaii   #04-00034   Dkt # 134   Filed  05/06/08   Page 6 of 20

motions alleged, among many other things, that Mr. Kotoshirodo was biased against Ms. Smith.

Faced with an intractable clash of personalities that apparently affected many cases and could have required extensive and expensive litigation, the court ordered the debtor and the trustee into mediation in the seventeen cases in which Ms. Smith had filed similar motions against the trustee. Shortly thereafter, Ms. Smith withdrew fourteen of the seventeen motions.

At about the same time, the trustee prepared a draft final report and accounting and submitted it to the Office of the U.S. Trustee for review. On March 28, 2007, the Assistant U.S. Trustee returned the draft report to the trustee and stated that the report should be held pending conclusion of the mediation. This was an error. Nothing in the court's alternative dispute resolution order stayed any action in the bankruptcy case other than the debtor's motion to show cause. I ordered mediation in order to expedite, not delay, the closing of the case. But no one informed me of the Assistant U.S. Trustee's decision until October 30, 2007. Therefore, I was unable to correct the mistaken impression until a hearing on November 2, 2007, at which I directed the trustee to resubmit his final report by November 12, 2007.

In the meantime, in May 2007, the parties stipulated that the trustee would

7

immediately disburse another $10,000 to the debtor.

The mediator was able to help the parties resolve most of the remaining cases, but not this one. The parties reported in October 2007 that they were unable to reach a settlement.

In late 2007, Ms. Smith voluntarily placed her law license on inactive status. Ms. Smith withdrew and Eric A. Seitz appeared as counsel for the debtor.

In his final application for compensation, the trustee seeks $6,500.00 in fees and $271.05 in expenses for 37.50 hours of work on the case between January 31, 2004, and January 28, 2007. The trustee does not request compensation for, and does not document in his application, any work he performed after January 28, 2007. Nor does he seek compensation for six hours of work by his assistant on the case.

The trustee states that he is entitled to a maximum commission of $8,711.47 under 11 U.S.C. § 326(a) but has reduced his fee request by $2,211.47 to compensate the estate for the interest that would have accrued, at an estimated 4 percent, on the $42,706.10 in sale proceeds that the estate would have earned if he had promptly deposited the escrow check. He states that the actual interest the funds would have earned in his bank account is 0.5 percent. Because the trustee only submitted time sheets for the 37.5 hours for which he is seeking

8

compensation, however, there is no evidence that the trustee actually incurred fees of at least $2,211.47 more than what he has requested.

The United States Trustee urges the court to deny compensation to the trustee on the grounds that the trustee has failed to close the case expeditiously, failed to account for all monies received, and failed to furnish accurate information about the estate.

The debtor seeks denial of compensation on similar grounds and recovery from the trustee to compensate the debtor and her attorneys.

All creditors have been paid in full.

**III. DISCUSSION**

    A.    <u>The Trustee's Breaches of Duty</u>

        1.    *<u>The Trustee's Duty to Close the Estate Expeditiously</u>*

The Bankruptcy Code requires a chapter 7 trustee to "collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interests of parties in interest[.]" 11 U.S.C. § 704(a)(1). The duty to close the case expeditiously is the trustee's "main" duty and "overriding responsibility". <u>See, e.g.</u>, <u>Estes & Hoyt v. Crake</u> (<u>In re Riverside-Linden Inv. Co.</u>), 925 F.2d 320, 322, 324 (9th Cir. 1991). "The duty to close the estate expeditiously will often conflict with other duties, but this conflict is

9

U.S. Bankruptcy Court - Hawaii   #04-00034   Dkt # 134   Filed  05/06/08   Page 9 of 20

explicitly recognized in the text of the statute itself, which requires the bankruptcy trustee to balance the need for expeditious conduct against the 'best interests of parties in interest[.]'" Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson), 5 F.3d 750, 754 (4th Cir. 1993) (citation omitted).

Mr. Kotoshirodo did not expeditiously administer and close the debtor's estate. For more than six months after the meeting of creditors, he took no action to liquidate the residence, the estate's only asset with nonexempt equity. Even at that late date, he moved only because he learned, by sheer coincidence, that the debtor was trying to sell the residence. There is no telling how long he would have let the case languish but for a chance encounter with a real estate agent. After the sale closed, he lost the net proceeds and incorrectly claimed that he had not received them until the Assistant U.S. Trustee dug out the facts. Even then, he did not personally attempt to recover the money but let the Assistant U.S. Trustee do the work for him. He waited fifteen months after the sale to hire an accountant to prepare tax returns and waited six months for the accountant to finish the returns.

The trustee urges the court to take his workload into consideration. Mr. Kotoshirodo became trustee in a particularly difficult chapter 11 case in 2005. At about the same time, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act. This spurred a surge in chapter 7 filings that tripled or

10

quadrupled trustees' caseloads. During this same period of time, another chapter 7 panel trustee fell seriously ill and died, and Mr. Kotoshirodo eventually was assigned dozens of his colleague's cases. Although these extenuating circumstances weigh against a finding that the trustee has acted in bad faith, a heavy caseload does not excuse a bankruptcy trustee for breach of his statutory and fiduciary duties. In re Gorski, 766 F.2d 723, 727 (2d Cir. 1985)("If appellant finds that his heavy caseload makes it difficult properly to carry out his duties as a trustee, the solution is for him to take fewer cases." ).

The trustee also argues that the debtor's former counsel partly caused his delay in closing the case by filing a meritless objection in November 2006 to an amended proof of claim and by filing the motion for an order to show cause, and that the U.S. Trustee created further delays by "bouncing" a draft final report. The trustee is correct, but he remains solely responsible for more than two years of unnecessary delays.

    2. *The Trustee's Duties Concerning Estate Property*

By statute, the trustee is "accountable for all property received[.]" 11 U.S.C. § 701(a)(2).

In addition to a trustee's statutory obligations, bankruptcy trustees must comply with the same high standards that apply to all other types of trustees. Lines

11

v. Falstaff Brewing Co., 233 F.2d 927, 928 (9th Cir. 1956). The trustee "owes a fiduciary duty to debtor and creditors alike to act fairly and protect their interests." Martin-Trigona v. Ferrari (In re WHET, Inc.), 750 F.2d 149 (1st Cir. 1984)(per curiam).

In particular, if there are surplus funds in the estate after distribution to creditors, a chapter 7 debtor is a party in interest to whom the trustee owes a fiduciary duty because, under 11 U.S.C. § 726(a)(6), all surplus funds shall be returned to the debtor. U.S. ex rel. George Schumann Tire & Battery Co. v. Grant (In re George Schumann Tire & Battery Co.), 145 B.R. 104, 107 (Bankr. M.D. Fla. 1992).

In all tasks on behalf of the estate, the trustee must "exercise that measure of care and diligence that an ordinary prudent person would exercise under similar circumstances." U.S. ex rel. Block v. Aldrich (In re Rigden), 795 F.2d 727, 730 (9th Cir. 1986).

The Handbook for Chapter 7 Trustees published by the U.S. Department of Justice states other trustee duties. The handbook requires trustees to promptly deposit funds in the estate bank account after receipt (generally within two business days), chapter 9.A, and to file a report of sale in compliance with Fed. R. Bankr. P. 6004(f) "[u]pon completion" of a sale of estate property not in the

12

U.S. Bankruptcy Court - Hawaii   #04-00034   Dkt # 134   Filed 05/06/08   Page 12 of 20

ordinary course of business.  Chapter 8.K.6.  The handbook also requires trustees to review open asset cases on no less than a quarterly basis, and recommends such reviews on a monthly basis.  Chapter 8.T.

The trustee breached his fiduciary duty to the debtor and the estate's creditors by failing to promptly deposit the sale proceeds into an interest-bearing account.  A trustee "has a fiduciary obligation to conserve the assets of the estate and to maximize distribution to creditors."  Rigden, 795 F.2d at 730.

The trustee also breached his duty to provide an accurate accounting of the estate's affairs.  He did not file a report of sale until more than two years after the sale of the debtor's residence.  He filed two interim reports for 2005 which incorrectly implied that the sale had not taken place, and he did not file any interim reports for 2006.  If he had filed proper interim reports and periodically reviewed his cases, he would have discovered the lost check; his failure to do so cannot be excused.

    B.    <u>Appropriate Remedy for Trustee's Breach</u>

        1.    *<u>Damages</u>*

The debtor's motion for order to show cause asks the court to sanction the trustee by awarding the debtor the attorneys' fees and costs she incurred in pressing for the closing of her bankruptcy case and distribution of the surplus

U.S. Bankruptcy Court - Hawaii   #04-00034   Dkt # 134   Filed  05/06/08   Page 13 of 20

proceeds to her. I decline to do so for procedural reasons.

Most courts hold that, to recover damages from a trustee, "a complaint rather than motion procedure must be used." In re Rollins, 175 B.R. 69, 73 (Bankr. E.D. Cal. 1994) . Compare In re Charlestown Home Furnishing, 150 B.R. 226 (Bankr. E.D. Mo. 1993) (considering, without discussion of the procedural issue, a request to surcharge a trustee in connection with the trustee's motion to approve his final account).

An action for damages against a trustee for breach of statutory or fiduciary duties cannot proceed by motion. Under Fed. R. Bankr. P. 7001(1), a proceeding to recover money or property must be brought as an adversary proceeding. A trustee from whom a debtor seeks damages is entitled to the procedural protections of an adversary proceeding.

I therefore decline to award the debtor damages against the trustee, without prejudice to a procedurally proper action. My ruling on the trustee's final fee application and report is not intended to bar the debtor from bringing a future action for damages. I express no opinion on any issue that such an action might present, including (but not limited to):

(1)  what court has jurisdiction;

(2)  whether a bankruptcy trustee is liable for ordinary negligence, Hall v.

14

Perry (In re Cochise College Park, Inc.), 703 F.2d 1339, 1357 (9th Cir. 1983) ("[a]lthough a trustee is not liable in any manner for mistakes in judgment where discretion is allowed . . . , he is subject to personal liability for not only intentional but also negligent violations of duties imposed upon him by law[.]"); Red Carpet Corp. of Panama City Beach v. Miller, 708 F.2d 1576, 1578 (11th Cr. 1983)(per curiam); or only for intentional or willful misconduct, In re Weiss, 111 F.3d 1159, 1168 (4th Cir. 1997); Ford Motor Credit Co. v. Weaver, 680 F.2d 451, 461 (6th Cir. 1982); and Sherr v. Winkler, 552 F.2d 1367, 1375 (10th Cir. 1977);

(3)  the extent to which the trustee enjoys quasi-judicial immunity, Curry v. Castillo (In re Castillo), 297 F.3d 940 (9th Cir. 2002), or

(4)  the application of the Barton Doctrine, Beck v. Fort James Corp. (In re Crown Vantage, Inc.), 421 F.3d 963, 970 (9th Cir. 2005).

2.  *Removal of the Trustee*

Bankruptcy Code § 324(a) provides that the court, after notice and a hearing, may remove a trustee for cause. "What constitutes sufficient cause is not defined in the Code but rather is left for the courts to determine on a case-by-case basis." In re Haugen Const. Serv., Inc., 104 B.R. 233, 240 (Bankr. D.N.D. 1989). Actual

15

injury to the estate may serve as cause for removal if the injury is not the product of a mere mistake in judgment. Id. The court should remove the trustee, however, only if doing so would improve, rather than detract from, the administration of the estate. In re REA Holding Corp., 2 B.R. 733, 735 (S.D.N.Y. 1980).

Because removing the trustee would only prolong a case that is ready to be closed, and would not benefit any party at this late stage in the proceedings, removal is not an appropriate remedy for the trustee's breaches.

### 3. *Sanctions under Rule 9011*

Pursuant to Fed. R. Bankr. P. 9011(c), a bankruptcy court also may sanction a party for representations to the court that are frivolous or made for an improper purpose. The rule "authorizes sanctions against a party and/or his attorney in connection with the filing or servicing of pleadings or other documents." In re Westin Capital Markets, Inc., 184 B.R. 109, 118-19 (Bankr. D. Or. 1995). It is not intended to address general delays in administration of a bankruptcy case. Therefore, rule 9011 sanctions are unwarranted.

### 4. *Sanctions Under the Court's Inherent Authority*

The court also has the inherent power to impose sanctions for misconduct by or on behalf of a party in a case before it. Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). Before it can impose sanctions under its inherent sanctioning authority,

16

however, a court must make an explicit finding of bad faith or willful misconduct. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1196 (9th Cir. 2003). The trustee did not act willfully or in bad faith.

     5.     *Reduction in Trustee's Compensation*

Section 330(a) provides that the court may allow "reasonable compensation for actual, necessary services rendered by the trustee" and reimbursement for actual, necessary expenses. Under section 326(a), the trustee's compensation may not exceed a sliding scale percentage of "all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." "[Section] 326(a) sets a ceiling on the compensation a trustee may recover but does not purport to authorize compensation absent a determination pursuant to the provisions of § 330 of the 'reasonableness' of the fees requested." In re One City Centre Assocs., 111 B.R. 872, 880 (Bankr. E.D. Cal. 1990).[2]

The court may reduce or eliminate the trustee's fees if the trustee has not performed his duties expeditiously. Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.), 14 F.3d 1380, 1386 (9th Cir. 1994).

The trustee seeks $6,500.00 of compensation for 37.5 documented hours of

---

[2] The 2005 amendments to section 330(a), which arguably transformed the section 326(a)(6) percentage from a cap on reasonable compensation to a fixed commission, do not apply to this case.

17

U.S. Bankruptcy Court - Hawaii   #04-00034  Dkt # 134  Filed 05/06/08  Page 17 of 20

work (yielding an hourly rate of $173.33). This request must be reduced.

First, the trustee's delays created unnecessary work. If he had sold the property promptly, he would not have needed to investigate the debtor's sale of the property, conduct an examination of the debtor under rule 2004, respond to the debtor's opposition to his motion to retain a realtor or the debtor's motion to dismiss, or arrange for early distributions of the debtor's surplus. He probably would not have had to deal with the debtor's misguided objection to a creditor's claim, which Ms. Smith viewed as a means of getting the court's attention to the case. According to his timesheets, the trustee spent 10.6 hours on these projects. Those hours are not compensable.

Second, the trustee agrees that his fees should be reduced to reflect interest on the net sale proceeds while the check lay uncashed in his files. He says that the deduction should be $2,211.47, which is the interest that would have been earned on the $42,706.10 in sale proceeds over fifteen months (at four percent). The reduction must be larger because the fifteen month period is too short. The trustee is responsible for at least two years of delay (the six month period of inactivity after the first meeting of creditors, the fifteen month period while the sales proceeds were lost, and at least part of the excessive six month period it took to complete the tax returns). The interest reduction should therefore be $3,176.50.

18

U.S. Bankruptcy Court - Hawaii   #04-00034   Dkt # 134   Filed 05/06/08   Page 18 of 20

Third, the interest reduction should be applied, not to the statutory maximum fee under section 326, but to the amount of reasonable compensation which the trustee has documented. Applying the interest reduction to the fee cap would give the trustee a benefit – in the form of a credit against the losses which he caused – to which he has not proven he is entitled.

The trustee's timesheets end at January 29, 2007. I will not assume that the trustee did work which he has not documented, and even if he provided timesheets after that date I would probably not allow compensation for that work. Most of the activity during that period arose from the dispute over the trustee's actions. I would probably not allow compensation to a trustee for defending himself against allegations which proved substantially correct.

Therefore, I will allow reasonable compensation to the trustee for 27.1 hours of work at $173.33 per hour, which equals $4,697.24, less the interest reduction of $3,176.50, yielding an amount of $1,520.74. I will also allow the trustee reimbursement of expenses in the amount requested, $271.05.

      6.    *Accounting*

Because the trustee provided a sufficient accounting of his actions on behalf of the estate since the debtor filed her motion for order to show cause, I decline to order any further accounting by the trustee.

U.S. Bankruptcy Court - Hawaii   #04-00034   Dkt # 134   Filed 05/06/08   Page 19 of 20

## V. CONCLUSION

The trustee shall be awarded fees of $1,520.74 and costs of $271.05. The trustee's final report is approved subject to adjustment for the reduced allowance of the trustee's compensation. All other objections to the final report and accounting are OVERRULED. The debtor's requests for other relief are DENIED without prejudice to an independent action for damages against the trustee. Counsel for the Office of the U.S. Trustee shall submit an appropriate order.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **05/06/2008**

20

U.S. Bankruptcy Court - Hawaii   #04-00034   Dkt # 134   Filed  05/06/08   Page 20 of 20